IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMA CORRALES MARTIN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CLEMSON UNIVERSITY; JAMES | : | |
| BARKER; DOLORES HELMS; JANICE | : | |
| SCHACH; JUDY MELTON; STEPHANIE | : | |
| BARCZEWSKI; CONSTANCIO | : | NO. 07-536 |
| NAKUMA; PAULA HEUSINKVELD; | : | |
| and JONI HURLEY | : | |

<u>MEMORANDUM</u>

**Baylson, J.**                                                                                               **December 20, 2007**

**I.     Introduction**

Plaintiff, Dr. Norma Corrales Martin, ("Dr. Corrales" or "Plaintiff") has filed a Complaint alleging that her former employer, Clemson University ("Clemson"), and several Clemson employees ("Clemson employees" or "individual defendants"), discriminated against her because she is a Hispanic woman. Clemson and its employees (collectively "Defendants") have moved to dismiss the case for lack of personal jurisdiction and improper venue. Alternatively, they request a transfer of venue. For the reasons discussed below, this Court grants Defendants' motion to dismiss for lack of personal jurisdiction. The Court will also transfer the case to South Carolina.

**II.    Brief Factual Background and Procedural History**

According to the pleadings, in April of 2005, Dr. Corrales was denied tenure at Clemson University, located in South Carolina. As a result, on May 16, 2005, she initiated internal grievance proceedings at Clemson. In July of 2005, before the grievance process was complete,

Dr. Corrales left South Carolina to pursue an employment opportunity in Philadelphia.  She now resides in Philadelphia.

Dr. Corrales filed her Complaint on February 7, 2007.  <u>See</u> Doc. No. 1.  Defendants moved to dismiss for lack of personal jurisdiction and improper venue on May 30, 2007.  <u>See</u> Doc. No. 5.  Defendants moved, in the alternative, to transfer venue.  <u>See id</u>.  Following an unrecorded telephone conference with counsel, this Court allotted Dr. Corrales 30 days in which to conduct jurisdictional discovery and file a supplemental brief on personal jurisdiction.  <u>See</u> Doc. No. 13.  Dr. Corrales submitted the supplemental brief on October 31, 2007, <u>see</u> Doc. No. 15, and Defendants responded on November 9, 2007.  <u>See</u> Doc. No. 16.

### III.    Complaint

According to the Complaint, Clemson employed Dr. Corrales as a lecturer and then assistant professor of Spanish from August 1997 to May 2005.  Plaintiff alleges that she was paid less, worked at a lower step of the pay grade, and had heavier work loads that similarly situated Caucasian males.  <u>See</u> Compl. ¶ 25.  Plaintiff further alleges that she was never awarded a merit raise while Caucasians and males were awarded such raises.  <u>Id</u>.  Also, according to the Complaint, Dr. Corrales applied for support grants from Clemson on three separate occasions; however, her grant applications were denied while those of Caucasian males with less seniority were approved.  <u>See</u> Compl. ¶ 26.  Dr. Corrales alleges other examples of workplace discrimination, <u>see</u> <u>e.g.</u>, Compl. ¶¶ 27-30, 32, culminating in Clemson denying her tenure and creating a hostile workplace environment.  <u>See</u> Compl. ¶¶ 35-54.

Dr. Corrales also alleges that Clemson illustrated a pattern of discrimination against Hispanic employees, women, women of foreign birth and blacks.  <u>See</u> e.g., Compl. ¶¶ 55, 61, 65-

70. According to Dr. Corrales, the pattern of discrimination continues today. See Compl. ¶ 74.

Dr. Corrales alleges that because of Defendants' discrimination, she experienced physical, emotional, and economic harm. See Compl. ¶¶ 75, 77-79. She further alleges that the discrimination forced her to move from South Carolina, where Clemson is located, to Philadelphia, Pennsylvania, where she was offered new employment. See Compl. ¶ 78.

**IV.    Parties' Contentions Regarding Personal Jurisdiction**

    **A.    Defendants**

Defendants move to dismiss the Complaint for lack of personal jurisdiction. Defendants argue that they do not have contacts with the Commonwealth of Pennsylvania sufficient to justify this Court's exercise of personal jurisdiction over them. In support of their contention, Defendants submitted an initial affidavit from Defendant James Barker, the President of Clemson, which states, inter alia, that Clemson owns no property in any state other than South Carolina; that except for one individual, all named individual defendants reside in South Carolina and continue to work at Clemson; and that the entire process regarding Dr. Corrales' application for and subsequent denial of tenure took place in South Carolina. See Doc. No. 6-2.

As to the alleged contacts that Clemson has with Pennsylvania, Defendants argue that, pursuant to Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539, 541 (3d Cir. 1985), the contacts that Dr. Corrales asserts do not in fact enable a Pennsylvania Court to exercise personal jurisdiction over Clemson because they are the contacts of any nationally prominent university. Defendants argue that under Gehling, the general activities of a large university, such as having six percent of the student body from Pennsylvania, recruiting students, faculty and staff from Pennsylvania, advertising in national publications that circulate in Pennsylvania, and

conducting a media swing through Pennsylvania do not constitute Pennsylvania contacts sufficient for this Court's exercise of personal jurisdiction over the university.

In response to Plaintiff's "tort out/harm in" argument, Defendants argue that Dr. Corrales does not establish that Defendants caused harm in Pennsylvania, nor that this Court's exercise of personal jurisdiction would comport with notions of Due Process. Defendants argue that "[t]he only thing that happened after Plaintiff moved to Philadelphia was that President Barker mailed her his decision denying *her* appeal of the promotion and tenure decision." Defs'. Reply Br. 3. Defendants cite Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147, 152 (3d Cir. 1995) to support their claim that the mailing of this letter can not sustain this Court's exercise of personal jurisdiction over them. Furthermore, according to Defendants, just because Dr. Corrales may have continued to suffer in Pennsylvania does not mean that the harm occurred in Pennsylvania.

Defendants argue that even if this Court could exercise personal jurisdiction over Clemson, it could not exercise personal jurisdiction over the other defendants, who are all Clemson employees. According to Defendants, the personal jurisdiction analysis for each individual defendant should address the defendant's participation in the tortious conduct, the defendant's contacts with the forum state, and the defendant's role in the corporate structure. Defendants contend that Plaintiff does not make the necessary showing for this Court to exercise personal jurisdiction over any of the Clemson employees named as defendants.

**B.     Plaintiff**

Dr. Corrales counters that this Court indeed exercises personal jurisdiction over Defendants. As noted above, this Court granted Dr. Corrales leave to conduct jurisdictional

discovery. Subsequent to conducting that discovery, Dr. Corrales argues that the following jurisdictional facts support this Court's exercise of general personal jurisdiction over Clemson: Clemson recruits students at college fairs in Pennsylvania; Clemson enrolls Pennsylvania students; Clemson coaches target and recruit Pennsylvania high school athletes; Clemson faculty, students, staff and administrators regularly participate in events in Pennsylvania; Clemon solicits and receives donations from Pennsylvania residents; Clemson licenses its trademarks to Pennsylvania residents; Clemson purchases services and goods from Pennsylvania; Clemson regularly contracts with Pennsylvania entities; Clemson subcontracts to provide services to Pennsylvania entities; and Clemson faculty members consult in Pennsylvania.

 Dr. Corrales then argues that this Court may exercise specific jurisdiction over the Defendants because they purposely directed activities at Pennsylvania. To support the argument for specific jurisdiction, Dr. Corrales first points to exhibits generally indicating communications between Clemson employees and Dr. Corrales after Dr. Corrales moved to Pennsylvania. Dr. Corrales then relies on interrogatories whereby the named individual defendants state they have, for example, traveled to Pennsylvania to interview for employment positions or to attend and participate in conferences. According to Dr. Corrales, the litigation at hand arises out of or is related to these contacts. Pl.'s Supp. Br. 8-9. (Doc. No. 15). Dr. Corrales argues that Defendants Clemson and Barker recruit in Pennsylvania and in doing so, reaffirm their representations that they do not discriminate.

 Dr. Corrales also argues the "tort out / harm in" theory of personal jurisdiction applies. According to Dr. Corrales, the final letter that Clemson's President (Defendant James Barker) sent her, denying her appeal, constitutes a harm in Pennsylvania since Dr. Corrales was located in

Pennsylvania when she received the letter.  Dr. Corrales relies on Imos Indus., Inc. v. Kiekert AG, 155 F.3d 254, 260 (3d Cir. 1998) to contend that the letter establishes sufficient contacts to support this Court's exercise of personal jurisdiction over the Defendants pursuant to the Calder "effects test".[1]

In her supplemental brief on personal jurisdiction, Plaintiff advances the idea that Defendants conspired to deprive her of her civil rights, and that if one co-conspirator is subject to personal jurisdiction in a forum state, then all co-conspirators are likewise subject to personal jurisdiction in that state.  Dr. Corrales does not identify which co-conspirator, under this theory, would provide the initial basis for extending the exercise of personal jurisdiction over all co-conspirators.

Dr. Corrales argues that Pennsylvania has a strong interest in this litigation and that notions of fairness support this Court's exercise of personal jurisdiction over Defendants.

Throughout Dr. Corrales' submissions to the Court, she states that this case involves the discriminatory use of federal funds, implying that such use is of import to the personal jurisdiction analysis; however, Dr. Corrales does not develop this argument.

**V.    Legal Standard**

Federal Rule of Civil Procedure 4(e) allows a district court to assert personal jurisdiction over a non-resident to the extent allowed by the law of the state in which it sits.  See Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984).  Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over non-residents "to the

---

[1] The U.S. Supreme Court set out the "effects test" in Calder v. Jones, 465 U.S. 783 (1984).

fullest extent allowed under the Constitution of the United States." 42 PA. CONS. STAT. ANN. § 5322(b). Pennsylvania's long-arm statute includes a provision frequently referred to as the "tort out / harm in" provision, 42 PA. CONS. STAT. ANN. § 5322(a)(4), which "extends jurisdiction to anyone who causes harm or tortious injury, intentionally or not, in Pennsylvania, through acts or omissions outside Pennsylvania." Pennzoil v. Colelli, 149 F.3d 197, 201 (3d Cir. 1998).

Due process requires that the defendant have "minimum contacts" with the forum state, and that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Remick, 238 F.3d at 255 (quoting Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 109, 107 S. Ct. 1026, 94 L. Ed. 2d. 92 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). When determining whether personal jurisdiction exists, the court must resolve the question based on the circumstances that the particular case presents. Burger King, 471 U.S. at 485.

A court may exercise personal jurisdiction based on a defendant's general or specific contacts with the forum. General and specific jurisdiction are "analytically distinct categories, not two points on a sliding scale." O'Connor v. Sandy Lane Hotel, 496 F.3d 312, 321 (3d Cir. 2007). General jurisdiction is based upon the defendant's "continuous and systematic contacts" with the forum. General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-416, 104 S. Ct. 1868, 80

L. Ed. 2d 404 (1984)). Specific jurisdiction is appropriate only if the "plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably expect being haled into court' in that forum." Vetrotex, 75 F.3d at 151 (quoting Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)). Specific jurisdiction is established where the defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate[] to' those activities." BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000) (quoting Burger King, 471 U.S. at 472)). To find that a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state, the Third Circuit requires "a closer and more direct causal connection than that provided by the but-for test." O'Connor, 2007 WL 2135274, at *7. However, the required causal connection is looser than the tort concept of proximate causation. Id. (citing Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 99-100 (3d. Cir 2004). The appropriate analysis is fact-intensive, focusing on the "reciprocity principle upon which specific jurisdiction rests" – whether the defendant received the benefits and protections of a state's laws to the extent that it should, as a quid pro quo, submit to the burden of litigation in the state. O'Connor, 496 F.3d at 323.

  In deciding a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the allegations of the complaint are taken as true. However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits, or competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. See Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996), cert. denied, 519 U.S. 1028, 117 S. Ct. 583, 136 L. Ed .2d 513 (1996)). The plaintiff must establish those contacts with reasonable

particularity. See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1996).

**VI.    Legal Discussion**

Plaintiff argues that this Court exercises both general and specific jurisdiction over all Defendants, and Defendants contend this Court does not exercise personal jurisdiction over any of them. General and specific jurisdiction are "analytically distinct categories, not two points on a sliding scale," Sandy Lane Hotel, 496 F.3d at 321, and the Court will address each in turn.

**A.    General Jurisdiction**

As noted above, general jurisdiction is based upon the defendant's "continuous and systematic contacts" with the forum. General Elec., 270 F.3d at 150. When evaluating contacts with a forum, a court should look to a party's "purposeful and extensive availment" of the forum. Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). After conducting jurisdictional discovery, Dr. Corrales argues that this Court has general jurisdiction over all Defendants and submits many documents in support of her position. After reviewing the allegations and the submitted jurisdictional evidence, the Court concludes that it does not exercise general jurisdiction over the Defendants.

**1.    Clemson University**

Dr. Corrales contends that Clemson has "continuous and systematic" contacts with Pennsylvania. However, Dr. Corrales has submitted no case in which a defendant university from a nonforum state has been held subject to the general jurisdiction of a forum state. More importantly, the Third Circuit's decision in Gehling, supra, controls. Dr. Corrales has not persuaded the Court, in light of Gehling and in view of Dr. Corrales' jurisdictional discovery,

that Clemson has contacts with Pennsylvania sufficient to support a finding of general personal jurisdiction.

In Gehling, the Third Circuit evaluated whether a Pennsylvania court could exercise general personal jurisdiction over St. George's School of Medicine, an educational institution located in the West Indies. The forum-related activities of St. George's in Pennsylvania included advertising in national newspapers that circulated in Pennsylvania; enrolling students from Pennsylvania; sending school representatives to Pennsylvania as part of a "media swing"; and entering into an agreement with a Pennsylvania college to establish a joint program. Gehling, 773 F.2d at 541-42. The Third Circuit found that these contacts were insufficient to establish general jurisdiction, reasoning, in part, that these contacts were typical of nationally prominent universities. Id. at 542-43. Gehling emphasized that contacts such as enrolling students from Pennsylvania can not form the basis for general jurisdiction because "[a]dvanced educational institutions typically draw their student body from numerous states, and appellants' theory would subject them to suit on non-forum related claims in every state where a member of the student body resides." Id. at 542. See also Gallant v. Trustees of Columbia University, 111 F.Supp.2d 638, 641 (E.D. Pa. 2000), mandamus denied by 259 F.3d 715 (3d Cir. 2001) (explaining that general participation in the type of interstate activity in which any nationally prominent university would engage does not indicate that a particular university purposely directed its activities, or availed itself of, the forum state).[2]

---

[2] Courts outside of this Circuit have followed the reasoning in Gehling. See Scherer v. Curators of the Univ. or Missouri and Law School Admission Council, 152 F.Supp.2d 1278, 1282-84 (D. Kan. 2001) (summarizing case law on personal jurisdiction over universities).

As noted above, Dr. Corrales has alleged and submitted evidence indicating Clemson's 1) enrollment and recruitment of students from Pennsylvania, including student-athletes; 2) participation in athletic, education, and professional events in Pennsylvania; 3) solicitation of donations from Pennsylvania residents; and 4) recruitment of faculty from Pennsylvania as part of national searches. Under Gehling, these activities do not indicate that Clemson has purposefully availed itself of Pennsylvania laws and protections.

Dr. Corrales also argues that Clemson's activities "as a business in Pennsylvania" should subject it to the general jurisdiction of this Court. Pl.'s Supp. Memo., p. 4. (Doc. No. 15). In support of this claim, Plaintiff submits, for example, records of Clemson having licensed its trademarks to Pennsylvania businesses. See Pl.'s Exh. C.[3] However, Dr. Corrales does not argue that these agreements are anything more than the typical activities of a national university. In fact, many of the Pennsylvania businesses in Plaintiff's Exhibit C appear to sell trademarked items (sweatshirts, mugs, and the like) from most national universities. Such licensing agreements do not form the basis for general jurisdiction. Plaintiff has submitted other documents, collected through jurisdictional discovery, such as purchase orders indicating that Clemson has bought services and goods, like science lab equipment, from Pennsylvania-based businesses. See Exh. D. These purchase orders, as well as the other evidence Dr. Corrales has submitted, do not suffice to support this Court's exercise of personal jurisdiction over Clemson University. These exhibits indicate activity typical in nature and scope of a nationally prominent

---

[3] Unless otherwise specified, references to exhibits in this memorandum will be references to the exhibits to Plaintiff's Supplemental Memorandum on the Issue of Personal Jurisdiction of Defendants, Doc. No. 15.

university.  See, e.g. Kendall v. Trustees of Amherst College, 2007 WL 172396 (E.D. Pa.) (finding that contacts in Pennsylvania that were typical of any nationally prominent university did not support general jurisdiction).  Contrary to Dr. Corrales' arguments, the documents she submits do not indicate that Clemson "purposefully and extensively" availed itself of Pennsylvania's laws and protections.[4]

### 2. Clemson Employees

Dr. Corrales argues that this Court has personal jurisdiction over the named individual defendants, who are all alleged to be Clemson employees, although she has not regularly been clear as to when she is arguing in support of this Court's exercise of specific jurisdiction and when she is arguing in support of general jurisdiction over the Clemson employees.

The Court concludes that it does not exercise general personal jurisdiction over the Clemson employees named as defendants in this case.  As noted above, general jurisdiction requires "continuous and systematic" contacts with the state.  It is rare for an individual to have

---

[4] Plaintiff unpersuasively attempts to distinguish Gehling, Gallant, and Kendall on several grounds, and does not provide case law in support of her positions.  First, Dr. Corrales states that Gehling, Gallant, and Kendall did not involve the use of federal funds, implying that this is legally relevant.  However, Dr. Corrales does not explain why the personal jurisdiction analysis for universities using federal funds would differ from that for universities not using federal funds, nor does she cite any law on this matter.  The Court does not see the relevance of her argument.  Second, Dr. Corrales states that Gehling, Gallant, and Kendall did not address the impact of a university's recruitment of faculty in Pennsylvania.  Plaintiff argues that Clemson's recruitment of faculty from Pennsylvania subjects Clemson to the general jurisdiction of the state.  However, according to the jurisdictional evidence submitted, Clemson's recruitment activities in Pennsylvania were part of a national search.  A national search for faculty does not render a university subject to general jurisdiction in Pennsylvania, even if some of the national websites used by job seekers, such as "www.academiccareers.com," are administered in Pennsylvania.  Finally, Dr. Corrales contends that a case-by-case analysis obviates the value of Gehling, Gallant and Kendall.  Case-by-case analysis does not render precedent invalid.

such contacts with a state other than his/her domicile state, and Plaintiff has not alleged nor submitted evidence of contacts sufficient to support general jurisdiction. Dr. Corrales has alleged that some of the individual defendants have their publications sold in the state of Pennsylvania; however, such activity does not qualify as "continuous and systematic" contacts and does not indicate that the Clemson employees purposefully availed themselves of Pennsylvania's laws and protections. It is insufficient to support general jurisdiction. Plaintiff also submits certain responses to interrogatories of the individual defendants, which state that individual defendants traveled to Pennsylvania to interview for jobs or to participate in conferences. See, e.g., Pl.'s Exhs. K and M. Such occasional trips are also insufficient, and this Court does not perceive any justification for its exercise of general personal jurisdiction over any individual defendant.

      B.     **Specific Jurisdiction**

As discussed above, the analysis for specific jurisdiction differs from that for general jurisdiction. The Third Circuit recently explained the three-part analysis for specific jurisdiction. "First, the defendant must have 'purposefully directed [its] activities' at the forum. Second, the litigation must 'arise out of or relate to' at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice." Sandy Lane Hotel, 496 F.3d at 317 (internal citations omitted).

      1.     **Clemson University**

Dr. Corrales advances three theories to support her argument that this Court exercises specific jurisdiction over Clemson University. Under Dr. Corrales' first theory, the relevant injury in this case actually occurred in Pennsylvania, not South Carolina. This theory designates

the relevant injury not as the denial of tenure or the other alleged wrongs that took place in South Carolina, but as the subsequent denial of the requests Dr. Corrales made through the grievance process.  Dr. Corrales' grievance requests were denied in March, 2007, after she moved to Philadelphia.  Dr. Corrales submits as jurisdictional evidence the letter denying her grievance requests which was sent to her in Pennsylvania.  See Pl.'s Exh. I.  Dr. Corrales argues that this letter indicates that Clemson directed its activities at Pennsylvania.  Dr. Corrales further argues that the litigation arose out of this final letter and that Clemson should have expected it would be subject to a lawsuit in Pennsylvania when the University corresponded with her in Pennsylvania.

The Court is unpersuaded by this theory.  As an initial matter, Dr. Corrales' Complaint alleges harm that took place in South Carolina and does not mention the letter which denied her grievance requests.  According to the face of the Complaint, the alleged acts and omissions which caused Plaintiff harm all took place in South Carolina.  Furthermore, contrary to Dr. Corrales' argument, the initial denial of tenure is the proper focus for assessing a discriminatory act; a grievance proceeding does not extend the harm to a later date.  See Delaware State College v. Ricks, 449 U.S. 250, 261 (1980) (explaining that the date of the initial denial of tenure is the relevant date for assessing harm and that "entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative.")  See also Chardon v. Fernandez, 454 U.S. 6, 8 (1981) ("In Ricks, we held that the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful.")  Plaintiff's attempts to distinguish Ricks are unconvincing.

Furthermore, the Court finds that in sending Dr. Corrales a letter in Philadelphia, Clemson was reacting to the fact that Dr. Corrales had moved to Pennsylvania and not

purposefully directing its activities at Pennsylvania.  See Vetrotex, 75 F.3d at 152 (explaining that specific jurisdiction is not established by a small number of informational communications that do not amount to solicitation or delivery).

Dr. Corrales' second theory relies on the "tort out / harm in" doctrine, based on Pennsylvania's long-arm statute, 42 PA. CONS. STAT. ANN. § 5322(a)(4), which "extends jurisdiction to anyone who causes harm or tortious injury, intentionally or not, in Pennsylvania, through acts or omissions outside Pennsylvania." Pennzoil v. Colelli, 149 F.3d 197, 201 (3d Cir. 1998).  According to Dr. Corrales, under this theory, although the relevant acts and omissions occurred in South Carolina, they caused her harm in Pennsylvania.  Dr. Corrales argues that the harm she suffered in Pennsylvania consists of not holding a tenured position and working at the same level of employment she had when she began her employment with Clemson, approximately ten years ago.  Plaintiff argues that torts in South Carolina caused this harm in Pennsylvania, and the tort out / harm in doctrine therefore applies, enabling this Court to exercise personal jurisdiction over Defendants.  This second theory also fails, especially in light of the Ricks decision, supra.  As explained in Chardon, "the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." Chardon, 454 U.S. at 7.  The discriminatory acts alleged in this case took place in South Carolina.  Even though Dr. Corrales may have continued to suffer in Pennsylvania, this does not change the location of the harm.  Interpreting the "tort out / harm in" theory in the manner Dr. Corrales suggests would make an alleged tortfeasor subject to the jurisdiction of any state where a plaintiff selected to live.  See Temparali v. Rubin, 1997 WL 361019 *7 (E.D. Pa. 1997).

Plaintiff's third theory involves what is known as the Calder "effects test."  The Third

Circuit explained the effects test in Imo, supra. To support this Court's exercise of personal jurisdiction, the effects test would require, inter alia, a showing that Defendants expressly aimed any tortious activity at Pennsylvania. Imo, 155 F.3d at 261. See also Marten v. Goodwin, 499 F.3d 290, 297 (3d Cir. 2007) ("The effects test and traditional specific jurisdiction analysis are different, but they are cut from the same cloth. Just as the standard test prevents a defendant from 'be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts,' the effects test prevents a defendant from being haled into a jurisdiction . . . if the defendant did not expressly aim his conduct at that state") (internal citations omitted). Dr. Corrales does not show that Defendants expressly aimed their conduct at Pennsylvania. As argued by Defendants, Dr. Corrales merely shows that, after she moved to Philadelphia, the University contacted her about her pending grievance, permitted her to participate by telephone in the grievance process that she initiated before leaving South Carolina, and sent her a letter denying the requests she made via the grievance process. See Defs.' Supp. Resp. at 3-4. These actions do not illustrate that Defendants expressly aimed tortious activity at Pennsylvania.

None of Plaintiff's three theories is persuasive. "[T]he state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants. Jurisdiction is proper when the state of a plaintiff's residence is 'the focus of the activities of the defendant out of which the suit arises." Marten v. Goodwin, 499 F.3d at 298. The focus of Clemson's activities was in South Carolina. This Court does not exercise specific jurisdiction over Clemson University.

### 2. Clemson Employees

Plaintiff also argues that this Court exercises specific jurisdiction over the Clemson employees named as defendants in the case. Plaintiff argues that this Court exercises specific

jurisdiction over the named Clemson employees because they were officers and directors[5] of Clemson University and therefore responsible for Clemson's alleged tortious acts. As discussed above, this Court does not exercise personal jurisdiction over Clemson University. Therefore, there is no underlying jurisdiction over the university to support an extension of the jurisdiction to the university's employees.[6]

Dr. Corrales devotes considerable attention to the three-part test set forth by Judge Scirica in <u>Rittenhouse & Lee v. Dollars & Sense, Inc.</u>, 1987 WL 9665 (E.D. Pa. April 15, 1987). According to Dr. Corrales, application of this test shows that the Court has specific jurisdiction over the individual defendants in this case. Regardless of whether Defendants' conduct and contacts meet this test, the Court concludes that the test is inapplicable. Application of the <u>Rittenhouse & Lee</u> test depends upon an initial finding that a court has personal jurisdiction over the corporate entity for which the individual defendants work. Here, as noted above, the Court does not have jurisdiction over Clemson University, and <u>Rittenhouse & Lee</u> therefore does not apply.

Even if Dr. Corrales' arguments for specific jurisdiction over the Clemson employees did not depend on this Court's exercise of personal jurisdiction over the university, Plaintiff has not

---

[5] Plaintiff refers to the individual defendants as officers and directors of Clemson in her brief but makes no such allegations in the Complaint. There is no factual showing that the individual defendants who are allegedly faculty members and/or administrators are officers and/or directors.

[6] Similarly, there is no jurisdiction over the University to support a finding of jurisdiction over the Clemson employees on grounds that they conspired with the University. Plaintiff had argued that if one co-conspirator is subject to jurisdiction in the Court, all co-conspirators are likewise be subject to jurisdiction in the Court. Without addressing the legal merits of this argument, the Court determines that the argument is irrelevant, since there is no jurisdiction over any Defendant.

alleged facts or submitted evidence indicating that the harm she alleges arose out of the Clemson employees' contacts with the state. The closest Dr. Corrales comes to making such allegations involves Defendant James Barker who, as President of Clemson, sent Dr. Corrales the letter denying her grievance requests. The letter does not support personal jurisdiction over Mr. Barker for the same reasons that it does not support personal jurisdiction over the University, discussed above.

## V.     Conclusion

For these reasons, Defendants are not subject to either general or specific jurisdiction in Pennsylvania as they do not have the necessary minimum contacts such that they would reasonably anticipate being haled into court in this state. Because the Court bases its conclusion on personal jurisdiction, it need not discuss the Defendants' claim of improper venue.

In the interests of justice, since it appears that Defendants would be subject to jurisdiction in the District of South Carolina, this Court will transfer the action to the District of South Carolina pursuant to 28 U.S.C. § 1631. See Gallant, 111 F.Supp.2d at 644-45; Chicosky v. Presbyterian Medical Center, 797 F.Supp. 316, 320-23 (D.N.J. 1997) (explaining that a court may transfer an action when it does not have personal jurisdiction over all of the litigants and holding that transfer under section 1631 is proper even if the parties did not invoke that provision). See also Goldlawr Inc. v. Heiman, 369 U.S. 463, 465 (1962) (holding that a court may transfer an action pursuant to section 1406(a) even if it does not have personal jurisdiction over the defendants). An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMA CORRALES MARTIN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CLEMSON UNIVERSITY; JAMES BARKER; DOLORES HELMS; JANICE SCHACH; JUDY MELTON; STEPHANIE BARCZEWSKI; CONSTANCIO NAKUMA; PAULA HEUSINKVELD; and JONI HURLEY | : : : : : : | NO. 07-536 |

## **ORDER**

AND NOW, this 20th day of December, 2007, upon consideration of Defendants' Motion to Dismiss or, in the Alternative, To Transfer Venue (Doc. No. 5), the response, reply, and sur-reply thereto, as well as the supplemental briefs on personal jurisdiction, it is hereby ORDERED that the Motion to Dismiss is GRANTED.  This Court lacks personal jurisdiction over the Defendants.  Accordingly, this action is TRANSFERRED to the District of South Carolina.  The Clerk shall transfer the record to that district.

BY THE COURT:

   /s/ Michael M. Baylson

Michael M. Baylson, U.S.D.J.

A:\Martin v. Clemson - Memo and Order re MTD.wpd